UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ARNOLD CHASTAIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:08CV47RWS |
| UNITED PARCEL SERVICE, INC., | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

On March 28, 2008, Plaintiff Arnold Chastain filed this lawsuit, claiming that Defendant United Parcel Service, Inc. (UPS) discriminated against him in employment. In his complaint, Chastain stated that his lawsuit was based on the Age Discrimination in Employment Act of 1967 (ADEA), the Americans with Disabilities Act of 1990 (ADA), and for retaliation.

UPS has moved for summary judgment on the basis that Chastain's claims are time-barred because he did not file this lawsuit within 90 days of receipt of a right to sue letter issued by the Equal Employment Opportunity Commission (EEOC) and Chastain did not engage in any protected activity that would support a finding of retaliation. Chastain argues that his claims are subject to equitable tolling and, as a result, are not time-barred. Chastain does not address UPS's argument that he did not engage in any protected activity. Because equitable

tolling does not apply to Chastain's claims, I will grant summary judgment on Chastain's ADEA, ADA, and retaliation claims brought under federal law. I will grant summary judgment on Chastain's retaliation claims brought under the Missouri Human Rights Act (MHRA) because Chastain has not established that he engaged in any protected activity.

*Background*

To say that the facts underlying Chastain's claims are confusing and unclear is an understatement. This is due in part to the fact that Chastain was pro se while the factual record was developed. Another factor contributing to the lack of clarity is that Chastain had previously filed a charge of employment discrimination (relating to acts by Chastain's supervisor during 2003–2005) and Chastain mentions those acts in his complaint and his deposition. A third contributing factor is that Chastain was unable to identify with any degree of accuracy the time periods for many of the incidents he describes. A fourth contributing factor is that UPS submitted only portions of Chastain's deposition transcript and Chastain, through his attorney, has submitted only one affidavit. Chastain's affidavit concerns only his receipt of right to sue letters and Chastain's subsequent conversation with an EEOC investigator. Because Chastain's federal claims are time-barred, I will not detail the facts surrounding them. However, because

Chastain brings his retaliation claims under both state and federal law, I will provide the facts relevant to his retaliation claims.

Arnold Chastain worked for United Parcel Service, Inc. for about twenty-five years. At some point prior to 2005, while Chastain was working for UPS, Chastain filed a charge of discrimination with the EEOC. Chastain apparently withdrew the charge.[1] Nothing in the record suggests Chastain experienced any negative treatment as a consequence of Chastain filing his first charge.

In the spring of 2007,[2] Chastain left UPS as a result of a number of factors that form the basis for this action. In November 2007, Chastain filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights (MCHR). The record is not clear when exactly Chastain filed his charge. The charge form is dated November 28, 2007, but EEOC investigator Evelyn D. Silas conducted a "determination interview" with Chastain concerning the charge on November 19, 2007.

---

[1] Chastain does not state that he withdrew the charge, but in his deposition, he repeatedly states that he "stopped it."

[2] On page 8 of Chastain's deposition, Chastain stated he stopped working for UPS in May, 2007. On page 10, Chastain says April 2007. On the charge Chastain filed with the Missouri Commission on Human Rights, Chastain provided June 2007 as the date he stopped working. This discrepancy may be due to Chastain's use of six weeks of vacation time leading up to his "official" retirement date.

On December 6, 2007, the EEOC issued a right to sue letter, signed by Silas. The letter included the following paragraph:

> **Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different) (emphasis in original).

Nearly one month later, on January 4, 2008, the MCHR issued its own right to sue letter. The letter stated, "This is your **NOTICE OF RIGHT TO SUE** pursuant to the Missouri Human Rights Act." It included the following paragraph:

> This letter indicates your right to bring a civil action within 90 days of such notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. Upon issuance of this notice, the commission shall terminate all proceedings relating to the complaint. No person may file or reinstate a complaint with the commission after the issuance of a notice under this section relating to the same practice or act. Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party (emphasis added.) [sic] [The text did not contain any

emphasis.] You are hereby notified of your right to sue the respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST** (emphasis in original).

Chastain testified that after receiving the MCHR right to sue letter, he contacted EEOC investigator Silas.[3] Chastain stated that Silas "informed [him] that [he] has 90 days from the last dated right to sue letter to file suit." Chastain testified that he relied on Silas's advice in waiting until March 28, 2008 to file this lawsuit. Match 28, 2008 was within ninety days from the date of the MCHR letter, but more than ninety days from the date of the EEOC letter.

When Chastain filed this lawsuit, he completed the District Court's "Employment Discrimination Complaint" form which is available to all pro se plaintiffs for completion when filing a lawsuit for employment discrimination. Chastain alleged that his lawsuit was based on the ADEA, the ADA and retaliation. Because Chastain attached a right to sue letter from the MCHR notifying him of his right to sue under the MHRA, I ordered Chastain to notify the Court whether his claims are brought exclusively under federal law or whether he also brings state-law claims. Chastain informed the Court that his claims are

---

[3] Chastain's affidavit says he received the MCHR letter on January 4, 2008.

brought under federal law and the MHRA. Chastain did not, however, seek leave to amend his complaint to assert claims under the MHRA.

Chastain testified that Ed Moss was Chastain's Division Manager for about three or four years. Within six months of Moss becoming Chastain's Division Manager, Moss and Chastain developed a bad relationship. Chastain believes that Moss was bitter towards him and motivated to "punish" him because he incorrectly believed that Chastain had written an anonymous letter to the District Manager complaining about the cancellation of a Christmas party.

While Moss was Chastain's Division Manager, Chastain was forced to work without ten hours off between shifts. Chastain testified that Moss left UPS about a year before Chastain left the company. In another part of his deposition, Chastain testified that he continued to work for UPS for another year and a half to two years after Moss left UPS.

After Moss left, Chastain's hours were consistently around 12 hours a day, with the exception of peak season during the "week or so preceding the Christmas holiday." During peak season in December 2006, Chastain was sent from Sikeston, Missouri to Poplar Bluff, Missouri to work. A female co-worker was sent to Hayti, Missouri. The female co-worker was allowed to stay in a motel near the UPS center in Hayti rather than drive home at night while Chastain was not.

Chastain testified that he asked his Center Manager, Joe Boyer, for permission to stay in a hotel. According to Chastain, Boyer refused. Boyer denies that Chastain ever asked permission to stay in a hotel. Chastain believes the disparate treatment was due to the female co-worker being in "the in crowd" and he was out. Chastain also believes he was treated differently than female employees who were allowed to go home before dark. Chastain attributes this disparate treatment to sex discrimination, but he did not allege sex discrimination in this lawsuit.

Chastain also testified that he learned that a female co-worker and a male co-worker were paid a mileage reimbursement while Chastain was not. Boyer denies ever refusing to allow Chastain to obtain a mileage reimbursement. The record does not contain any information on the co-workers' ages or whether they were disabled.

There is evidence that Chastain's supervisor pressured him to retire based on his age. Chastain testified, "I was told at 55 everybody should be retired." Chastain testified that Boyer repeatedly told him, "You're 55, you should retire." Boyer testified that based on the economic incentives UPS provided in its early retirement package, he looked forward to retiring at age 55, mentioned his own plans of early retirement to Chastain, and noted this option when Chastain

complained about the demands of the job. In March 2009, after the initiation of this lawsuit, Boyer retired from UPS at age 55.

At some point, Chastain's brother made an anonymous complaint to the "complaint line" regarding the number of hours drivers were working in Missouri. Chastain was questioned several times whether he had made the complaint. Chastain denied having made the call. As a result of one of the "hot line calls," Chastain's hours went back to 12 daily.

On December 31, 2006, Chastain also made a call to the "UPS Compliance Hot Line." His call complained that the Department of Transportation "says there should be 10 hours off duty before you can go back to work." On or about January 23, 2007, Chastain received a call back from Sally Lee at the call center.

Boyer began to increase Chastain's hours and eventually required him to work from 5:00 a.m. to 9:30 or 10:00 p.m. Chastain was unsure whether Boyer increased his hours to retaliate against him for having called the corporate concern line. Chastain believes he was subjected to retaliation for having dropped his contribution to United Way, but it is not clear in what way he experienced retaliation. In his answer to interrogatories, Chastain stated he believed his hours were increased more than other supervisors for refusing to contribute to the United

Way. During his deposition, Chastain testified that Boyer began increasing Chastain's hours *before* he elected not to donate to the United Way.

The long hours eventually took a toll on Chastain's health and on December 23, 2006, his body "just collapsed or gave out." Chastain resigned sometime in the Spring of 2007, filed a discrimination charge with the EEOC and MCHR, and after receiving two right to sue letters, brought this lawsuit.

***Legal Standard***

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998). When a genuine issue of material fact exists, summary judgment should not be granted.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

UPS argues it is entitled to summary judgment because Chastain did not file this lawsuit within 90 days of the EEOC's right to sue letter. UPS also argues Chastain cannot prevail on his retaliation claim because he did not engage in any protected activity.[4] Chastain argues that he is entitled to equitable tolling because he relied on the erroneous advice of an EEOC investigator. Chastain does not respond to UPS's argument that he did not engage in any protected activity.

*Equitable tolling*

Lawsuits under Title VII must be brought within ninety days after the plaintiff receives a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1);

---

[4] Defendant also argues it is entitled to judgment as a matter of law because Chastain seeks to recover for acts that occurred more than 300 days before he filed his administrative charge and because Chastain has offered no competent evidence of age or disability bias.

Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149–50 (1984). Both the ADA and ADEA have also adopted a ninety day requirement. 42 U.S.C. § 12117(a) (ADA claims); 29 U.S.C. § 626(e) (ADEA claims).

The ninety day period begins to run on the day the right to sue letter is received at the most recent address that the plaintiff has provided the EEOC. Hill v. John Chezick Imports, 869 F.2d 1112, 1124 (8th Cir. 1989). The plaintiff is presumed to receive the EEOC right to sue letter three days after it was mailed. Baldwin, 466 U.S. at 148 n.1. The ninety-day limitation period "is not a jurisdictional pre-requisite to federal suit and is, therefore, subject to equitable tolling in appropriate circumstances." Hill, 869 F.2d at 1124.

Chastain received an EEOC right to sue letter dated December 6, 2007. He is presumed to have received the letter on December 10, 2007.[5] As a result, the ninety-day period for filing Chastain's ADA and ADEA claims ended on March 10, 2008. 42 U.S.C. § 12117(a); 29 U.S.C. § 626(e). This lawsuit was filed on March 28, 2008. Chastain testified that his delay in filing this lawsuit was due to the erroneous advice of an EEOC investigator.

---

[5] December 9, 2007 was a Sunday. Accordingly, Chastain is presumed to have received the right to sue letter on December 10, 2007.

"Courts have generally reserved the remedy of equitable tolling for circumstances which were truly beyond the control of the plaintiff." Hill, 869 F.2d at 1124. "It is clear that equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant." Lawrence v. Cooper Comtys., Inc., 132 F.3d 447, 451 (8th Cir. 1998). Equitable tolling is justified where the plaintiff received inadequate notice from the EEOC, where a motion for appointment of counsel is pending and equity would justify tolling the statutory period, and where the court has led the plaintiff to believe he or she had satisfied all requirements or where the defendant's affirmative misconduct lulled the plaintiff into inaction. Baldwin, 466 U.S. at 151.

The Eighth Circuit has recognized equitable tolling is appropriate where, otherwise, an uncounseled plaintiff would be penalized for the EEOC's mistake of law or where the EEOC misled the plaintiff. Jennings v. Am. Postal Workers Union, 672 F.2d 712, 715 (8th Cir. 1982); Lawrence, 132 F.3d at 451. For example, in Jennings, the plaintiff alleged that she repeatedly attempted to file a complaint with the EEOC, but the EEOC declined to process her charge based on its own erroneous interpretation of law. 672 F.2d at 715. The court found that equitable tolling would be appropriate under the alleged facts and remanded the case to determine whether the plaintiff's allegations were true. Id. at 715–16.

When the EEOC has misled the plaintiff "into reasonably believing" her actions suffice to protect her rights, equitable tolling is warranted. Lawrence, 132 F.3d at 452. Similarly, where the form issued by a state agency could "easily mislead a claimant unassisted by counsel" to miss a filing deadline, equitable tolling is appropriate. Anderson v. Unisys Corp., 47 F.3d 302, 306–07 (8th Cir. 1995).

In this case, the EEOC issued a right to sue letter signed by Silas on December 6, 2007. The letter informed Chastain of his right to sue and warned him, "Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost" (emphasis in original). The EEOC letter also noted that, "The time limit for filing suit based on a state claim may be different."

Less than a month later, Chastain received a right to sue letter dated January 4, 2008 from the MCHR that informed Chastain, "This is your **NOTICE OF RIGHT TO SUE** pursuant to the Missouri Human Rights Act." The MCHR letter warned Chastain that he must initiate a lawsuit "**WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR [HIS] RIGHT TO SUE IS LOST**" (emphasis in original).

-13-

Chastain testified that after receiving the MHRC right to sue letter, he contacted Silas, the EEOC investigator who worked on his complaint. Chastain stated that Silas "informed [him] that [he] has 90 days from the last dated right to sue letter to file suit." Chastain testified that he relied on Silas's advice in waiting until March 28, 2008 to file this lawsuit.

Chastain's affidavit does not provide any other information or contain any detail to put the conversation between Chastain and Silas in the proper context. Chastain's affidavit is so vague and lacking in detail that it is impossible to determine exactly what Silas referred to when she told Chastain the ninety-day period began to run with the last-dated letter.[6] The affidavit does not identify what question Chastain asked Silas or what Chastain and Silas were discussing when Silas informed Chastain that he had ninety days from the last-dated right to sue letter. Chastain's affidavit <u>does not</u> state that Silas informed him that the ninety-day period for filing a federal claim began to run when he received the MCHR letter.

Chastain's affidavit states that Silas informed him the period runs from the last-dated letter. The record shows that Chastain had filed more than one EEOC

---

[6] Neither side has submitted an affidavit or deposition testimony from Silas wherein she describes the conversation.

charge against UPS. The affidavit does not identify whether Silas's advice concerned two EEOC-issued right to sue letters or one letter issued from the MCHR and another from the EEOC. Chastain has provided no evidence that Silas was aware that the MCHR issued a right to sue letter or that his conversation with Silva even touched on the effect an MCHR right to sue letter might have on his federal claims.

Chastain received a letter from the EEOC that stated in bold lettering that any lawsuit under federal law must be filed within ninety days of the receipt of "this notice." Chastain has not established that the EEOC investigator told him to disregard that notice or that the notice was inaccurate. As a result, I cannot find that the EEOC investigator's advice was "sufficiently misleading to cause a reasonable person to believe" the ninety-day period began to run from the issuance of the MCHR right to sue letter. Although equitable tolling is justified when the EEOC provides misleading information to an uncounseled plaintiff,[7] Chastain has not shown that he received misleading information. Because Chastain has failed to demonstrate that he is entitled to equitable tolling, his federal claims are time-barred.

---

[7] Chastain was uncounseled at the time he filed his EEOC charge. Counsel was appointed after UPS moved for summary judgment.

*Claims under the MHRA*

In his complaint, Chastain did not specifically allege violations of the MHRA, but he did attach a right to sue letter from the MCHR granting him the right to sue under the MHRA. Chastain alleged violations of the ADEA and the ADA. Chastain also brought a cause of action for retaliation. Because it was not clear whether Chastain attached the MCHR right to sue letter to demonstrate he had exhausted his administrative remedies or to assert claims under the MHRA, I ordered Chastain to inform the Court whether he asserted claims under the MHRA, under federal law, or both.

UPS argues that Chastain's complaint does not allege a violation of the MHRA. Chastain argues that under the liberal notice pleading requirements of Fed. R. Civ. P. 8(a), his general allegations coupled with the attached right to sue letter from the MCHR put UPS on notice of his claims under the MHRA.

The complaint Chastain filed is the District Court's "Employment Discrimination Complaint" form which is available to all pro se plaintiffs for completion when filing a lawsuit for employment discrimination. Chastain marked that his employment discrimination lawsuit is based on the ADEA and the ADA. The complaint form allows pro se plaintiffs to mark the "other" box and describe other bases of the lawsuit. Chastain checked the "other" box and stated

that he also brought a retaliation claim. Chastain did not mention any other type of claim in his complaint. Chastain's EEOC charge specifically alleges violations of federal law. Despite my inquiries, Chastain has not sought leave to file an amended complaint that brings claims for age or disability discrimination under the MHRA. Because Chastain's complaint did not put UPS on notice of any claims of age and disability discrimination under the MHRA and Chastain has taken no steps to add state-law claims for age and disability discrimination, I conclude that Chastain's age and disability discrimination claims are brought only under federal law. However, because Chastain attached the MCHR right to sue letter and wrote "retaliation" in the "other" section of the form complaint, I conclude that UPS was on notice that Chastain may have brought his retaliation claims under both federal and state law.

*Retaliation claim*

UPS argues that it is entitled to judgment on Chastain's retaliation claim because Chastain did not engage in any protected activity. Chastain's response appears to be that he suffered retaliation for the "preload supervisor not reaching his goal of new preload number assigned."[8]

---

[8] Chastain filed a pro se response in opposition. Appointed counsel did not file a supplementary response to UPS's argument that Chastain did not engage in protected activity.

To establish a prima facie case of retaliation under the MHRA, the employee must show that (1) he complained of discrimination; (2) the employer took adverse action against him; and (3) the adverse action was causally related to the discrimination complaint. Medley v. Valentine Radford Commc'n, 173 S.W.3d 315, 325 (Mo. App. 2005). Chastain did not complain of discrimination. He testified that he believes UPS retaliated against him for calling UPS's Compliance Line to complain about the number of hours employees were required to drive, for discontinuing his United Way contribution, and because Moss incorrectly believed Chastain had complained about the cancellation of the Christmas party. None of Chastain's acts constitute a protected activity under the MHRA. Because Chastain has failed to establish a prima facie case of retaliation under the MHRA, UPS is entitled to judgment on Chastain's retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United Parcel Service, Inc.'s motion for summary judgment [#24] is **GRANTED**.

Dated this 9th Day of February, 2010.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE